TARA K. MCGRATH
United States Attorney
SABRINA L. FEVE
Assistant U.S. Attorney
California Bar No.: 226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6786
Fax: (619) 546-0831
Email:  Sabrina.Feve@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VASILE IONITA (1),<br>ANDREI CRISTIAN GEANGASU (2),<br><br>Defendants. | Case No.:  '24 MJ1289 VET<br><br>**COMPLAINT FOR VIOLATION OF:**<br><br>Title 18, U.S.C., Sec. 1029(a)(2) and (c)(1)(A)(i) - Use of Unauthorized Access Devices; Title 18, United States Code, Sections 1029(a)(4) and (c)(1)(A)(ii) - Possession of Access Device-Making Equipment; Title 18, United States Code, Sections 982(a)(2)(B) and 1029(c)(1)(C) – Criminal Forfeiture |

The undersigned Complainant, being duly sworn, states that, at all times material to the Complaint:

### Introductory Allegations

1. An "access device" was any card, plate, code, account number, electronic serial number, personal identification number, or other means of account access that

could be used, alone or in conjunction with another access device, to obtain money, goods, or services. Common forms of access devices were debit and credit cards, as well as the account information typically encoded on the magnetic strips on the backs of such cards.

2.  An "unauthorized access device" was any access device that was lost, stolen, or obtained with intent to defraud.

3.  The U.S. Department of Health and Human Services, Administration for Children and Families, administers the Temporary Assistance to Needy Families (TANF) program.  TANF is a federally funded assistance program that supports low-income families with children.  In California, TANF funds are used to operate CalWORKS, a state public assistance program that provides cash aid to eligible families with one or more children in the home.  In California, CalWORKS public assistance benefits are distributed by means of a card encoded with electronic account information, similar to a debit or credit card, called the California Advantage Electronic Benefit Transfer Card, which recipients use, along with a four-digit personal identification number, to withdraw funds.

## Count 1
## Use of Unauthorized Access Devices
## 18 U.S.C. § 1029(a)(2)

4.  Paragraphs 1 through 3 are hereby incorporated by reference as if fully stated herein.

5.  On April 1, 2024,  in the Southern District of California and elsewhere, defendants VASILE IONITA and ANDREI GEANGASU did knowingly and with intent to defraud use one and more unauthorized access devices, to wit, Electronic Benefit Transfer account information and personal identification numbers issued to persons other than defendant, during a one-year period, and by such conduct obtain cash

and other things of value aggregating $1,000 and more during such one-year period, said use affecting interstate and foreign commerce;

All in violation of Title 18, United States Code, Sections 1029(a)(2) and 1029(c)(1)(A)(i).

## Count 2

### Possession of Device-Making Equipment

### 18 U.S.C. § 1029(a)(4)

6. Paragraphs 1 through 3 are hereby incorporated by reference as if fully stated herein.

7. On April 1, 2024, in the Southern District of California, defendants VASILE IONITA and ANDREI GEANGASU did knowingly and with intent to defraud have custody and control of and possess device-making equipment, to wit, two ATM skimmer devices and one pinhole camera, said use affecting interstate and foreign commerce;

All in violation of Title 18, United States Code, Sections 1029(a)(4) and 1029(c)(1)(A)(ii).

### Forfeiture Allegations

8. The allegations above are incorporated herein for purposes of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(B) and 1029(c)(1)(C).

9. Upon conviction of the offense set forth in the complaint, defendants VASILE IONITA and ANDREI GEANGASU shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B) and 1029(c)(1)(C), any property constituting and derived from proceeds Defendants obtained directly and

//

indirectly from the offense, and any personal property used and intended to be used to commit the offense.

This complaint is based on the attached Statement of Facts incorporated herein by reference.

*Kevin Rydalch*
———————————————
Special Agent Kevin Rydalch
U.S. Secret Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on April 2, 2024.

———————————————
HON. VALERIE E. TORRES
U.S. Magistrate Judge

## STATEMENT OF FACTS

I, Kevin Rydalch, being duly sworn, state as follows:

1. I have been employed as a Special Agent with the United States Secret Service (USSS) since March 2007. I am currently assigned to the San Diego Field Office. I am a graduate of both the USSS Training Center in Beltsville, Maryland and the Federal Law Enforcement Training Center in Glynco, Georgia. I also have had additional training and on-the-job experience with other federal, state and local law enforcement agents in connection with the investigation of said offenses and related offenses. Based on my training and experience, I am familiar with the methods used to commit wire fraud related offenses.

2. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Dates, times, and amounts are approximate.

*Overview*

3. the United States Secret Service (USSS), and the Southern California Cyber Fraud Task Force (SoCal CFTF) are working with state and federal agencies to investigate the theft and misuse of funds electronically distributed to individuals receiving public assistance.

4. This Affidavit is submitted in support of arrest warrants for Vasile IONITA and Andrei Cristian GEANGASU and warrants to search two Apple iPhones (inventoried under 412-2024-CE-52 and 412-2024-CE-53) and two black and red micro SD cards (collectively the **subject devices**) for evidence of and relating to access device fraud. As outlined below, on April 1, 2024, IONITA and GEANGASU made a series

of unauthorized withdrawals at San Diego County ATMs in which they accessed and stole, or attempted to steal, $8,030.00 from the public assistance benefit accounts of approximately 8 victims.

*Background on Electronic Benefit Transfer Cards*

5. In 2022, California's Department of Social Services (CalDSS) advised the SoCal CFTF that it had detected a rise in fraud associated with the electronic debit cards issued to individuals and families who qualify for California public benefits like CalFresh and CalWORKS.

6. The U.S. Department of Agriculture also noticed a rise in fraud associated with the Supplemental Nutrition Assistance Program (SNAP) that it administers through its Food and Nutrition Service (FNS). SNAP is a federally funded assistance program designed to help low-income individuals and families purchase food. In California, SNAP public assistance benefits are distributed through CalFresh and loaded to an account that a qualified recipient access by means of an access card, similar to a debit or credit card, called the California Advantage Electronic Benefit Transfer (EBT) Card. The EBT card system was developed to enable government agencies in California and many other states to deliver public assistance benefits to recipients using electronic transfers. The EBT system is a computer-based system through which authorization for qualifying food purchases and cash withdrawals are received via either a point-of-sale (POS) terminal or an ATM.

7. The U.S. Department of Health and Human Services, Administration for Children and Families, administers the Temporary Assistance to Needy Families (TANF) program. TANF is a federally funded assistance program that awards grants to individual states to support low-income families with children. In California, TANF grant funds are used to operate CalWORKS, a state public assistance program that provides cash aid to eligible families with one or more children in the home. Families that apply and qualify for ongoing CalWORKS assistance receive money each month

AFFIDAVIT IN SUPPORT OF COMPLAINT -2-

to help pay for housing, food, and other necessary expenses. Like CalFresh, CalWORKS benefits are distributed by CalDSS through the California Advantage EBT card.

8. After a recipient applies for, and is approved to receive, California public assistance benefits like CalFresh and CalWORKS, the benefits are automatically distributed to the recipient's EBT card on a designated day of the month (typically, in California, the first five days of the month). To access their benefits to purchase eligible food items, recipient swipe their card through a point-of-sale terminal, or insert it into an ATM, that records the card number, date, time, and amount of the transaction. The recipient then enters his/her unique Personal Identification Number (PIN) into a keypad to complete the transaction.

9. The SoCal CFTF has gathered evidence indicating that members of what appear to be one or more criminal enterprises are stealing California EBT account information by installing skimmers on point-of-sale terminals, often by targeting point-of-sale terminals at large volume retailers, like Walmart, in communities with higher concentrations of public benefit recipients. The skimmed data is then often re-encoded onto the magnetic strips of cards that members of the conspiracy use to make unauthorized withdrawals and purchases. These re-encoded cards are sometimes referred to as "cloned" cards. Cloned cards can be a blank white plastic card, or another debit, credit, or gift card. Cloned cards may have names or numbers embossed on the physical face of the card. A common feature of cloned cards is that the account number encoded on the card's magnetic strip will not match the number embossed on the card's face. To facilitate the use of the stolen EBT benefits, members of the scheme will commonly put stickers bearing the account's PIN on the physical cards, or access devices, that are swiped at a point-of-sale terminal along with the account balance.

10. Data provided by CalDSS indicates that, between approximately June 2022 and February 2024, in the Southern District of California and elsewhere,

AFFIDAVIT IN SUPPORT OF COMPLAINT -3-

unauthorized account users have stolen approximately $181,208,693.00 from CalWORKS recipients. These unauthorized withdrawals commonly occur at the start of each month, when monthly CalWORKS benefits are distributed. Most of the stolen funds were obtained through unauthorized ATM withdrawals.

11. In July and August 2022, the SoCal CFTF learned of connected incidents at Walmart stores in Chula Vista, National City, and Sherman Heights involving overlay skimmers that appeared to be part of an EBT fraud scheme.[1] According to police reports and records obtained by the task force, in June 2022, National City Police arrested a Romanian national who was caught installing an overlay skimmer without authorization at a National City Walmart. The suspect had at least one coconspirator assist him with the installation. In July 2022, employees at a Chula Vista Walmart discovered an unauthorized overlay skimmer installed on a point-of-sale terminal. Store surveillance footage showed that the individual arrested by National City Police had, along with his unidentified coconspirator, installed the overlay skimmer at the Chula Vista Walmart two days before his arrest in National City. When arrested by National City Police, the suspect presented a fake European ID that misrepresented his name and nationality Record checks revealed his true name, Romanian nationality, and indicated that he had entered the U.S. without inspection. Additional investigation revealed that this individual, or someone closely matching his appearance, had installed an overlay

---

[1] An overlay skimmer is a skimmer that is part of a counterfeit faceplate designed to resemble the legitimate point-of-sale terminal. Overlay skimmers are mounted to the legitimate point-of-sale terminal and allow a victim's credit or debit card to be read by the legitimate terminal. In the process of inserting the victim's credit or debit card into the legitimate terminal, the card is also read by the overlay skimmer, which stores the card's stolen electronic information for later unauthorized use. The overlay skimmers that target EBT cards are not designed to read credit or debit cards embedded with a chip (i.e., most credit and debit cards). Unlike most bank-issued credit and debit cards, EBT cards do not have chips (which makes the cards less expensive). The overlay skimmers that cannot read cards with chips therefore typically target EBT cards.

AFFIDAVIT IN SUPPORT OF COMPLAINT            -4-

skimmer at a Sherman Heights Walmart in March 2022 with the assistance of two additional coconspirators.

12.    In spring 2023, the USSS conducted operations in the Southern and Central Districts of California during which it surveilled ATMs that had historically been used to make unauthorized EBT account withdrawals. During the March operation in Los Angeles, the USSS arrested 14 individuals. During its June 2023 operation, the USSS-San Diego and SoCal CFTF arrested five individuals, along with a sixth individual in July 2023. Five of the six individuals arrested in San Diego County had a history of making of unauthorized EBT account withdrawals in San Diego prior to the night of their arrest and all six had one or more phones on them when arrested. Several of these individuals had also previously installed skimming devices on point-of-sale terminals or inside ATMs, and/or were found in possession of access-device making equipment at the time of their arrest. Of the 20 people arrested in Southern California between March and July 2023, all but one were Romanian. Many of the Romanians arrested possessed fake European IDs.

13.    As part of its broader investigation into the theft of EBT account benefits, the SoCal CFTF has obtained warrants to seize and search the phones of individuals engaged in skimming and EBT access device fraud activities. The consistent pattern is that individuals engaged in these activities are using phones in furtherance of the fraud. Examples include using phones to store and transmit stolen EBT account information, using phones to communicate with coconspirators in furtherance of the fraud, using phones to reserve and manage access to short-term rental accommodations and rental vehicles, using phones to navigate and for other location-related searches and services, using phones to conduct balance inquiries on stolen EBT accounts to determine the amount of the benefit and the date it will be deposited, and using phones to record and photograph fraud-related activities.

AFFIDAVIT IN SUPPORT OF COMPLAINT                        -5-

14. Due to their immigration status, both IONITA and GEANGASU are ineligible for CalFresh or CalWORKS. The SoCal CFTF has also collected the names of the victims from whose EBT accounts IONITA and GEANGASU made the prior unauthorized withdrawals. None of these victims' names match IONITA or GEANGASU.

<u>Arrests of IONITA and GEANGASU</u>

15. On the morning of April 1, 2024, the USSS and SoCal CFTF initiated an operation to target EBT-related fraud in San Diego County. The operation focused on ATMs where fraudulent EBT withdrawals had previously occurred. The selected ATMs were all for banks that operate in interstate and foreign commerce and whose headquarters are outside California.

16. On the morning of April 1, 2024, at approximately 0550 hours, law enforcement observed two individuals, the first of whom was later identified as IONITA, approach a set of three ATMs located at 4166 El Cajon Blvd, San Diego, CA. IONITA and GEANGASU arrived directly in front of the walk-up ATM, in a grey Ford Bronco Sport (CA 9CKT393). IONITA departed the ATM location a short time later after his three withdrawal attempts failed. During this same time, the second individual later identified as Andrew GEANGASU, was observed to be pressing firmly, repeatedly, on the area of the ATM where cards are inserted. He was also seen pressing firmly on the outside of the ATM. In my training and experience, and that of my colleagues, this behavior is consistent with someone trying to install skimming-related equipment in or on an ATM. (A subsequent inspection of the ATM, described below, confirmed that two deep-insert skimmers and one pinhole camera had been installed.) Both men then left the area and parked nearby, in the parking lot for Subway Sandwiches, located at Marlborough Avenue and El Cajon Boulevard. Next, at approximately 0600 hours, law enforcement observed both IONITA and GEANGASU

AFFIDAVIT IN SUPPORT OF COMPLAINT -6-

return to the same ATM and park on El Cajon Boulevard, directly in front of the walk-up ATM.

17. After IONITA and GEANGASU exited the vehicle and approached the ATM, law enforcement observed them conduct approximately 5 transactions at the ATM over approximately five minutes. Both IONITA and GEANGASU returned to the Ford Bronco. Approximately 10 minutes later, both IONITA and GEANGASU exited the Ford Bronco, and returned to the same ATM. Again, law enforcement observed them conduct approximately two more transactions at the ATM over approximately two minutes. During these transactions, law enforcement observed IONITA and GEANGASU insert what appeared to be an access device card at the ATM and press the ATM keypad, likely to enter a PIN. The transactions appeared to be cash withdrawals based on law enforcements observations of cash being removed from the ATM. IONITA appeared to place the cash in a wallet and GEANGASU appeared to place the cash in his front right jacket pocket. Based upon my training and experience, while not inherently illicit, individuals conducting legitimate transactions at ATMs typically conduct a single transaction and do not transition between multiple payment cards rapidly to conduct several transactions in a short period of time. Similarly, most legitimate ATM users do not conduct what appears to be counter-surveillance before/during/after making ATM withdrawals.

18. While IONITA and GEANGASU were at the ATM, law enforcement received contemporaneous information from CalDSS while IONITA and GEANGASU were conducting the multiple observed withdrawal transactions. CalDSS confirmed that the first withdrawal transaction took place on an EBT account belonging to an individual named D.C. Law enforcement also received contemporaneous information from California's Department of Motor Vehicles confirming that the individual conducting the ATM withdrawals did not appear to match the individual in whose name the EBT account was registered.

AFFIDAVIT IN SUPPORT OF COMPLAINT                    -7-

19. After observing approximately seven transactions, IONITA and GEANGASU returned to the Ford Bronco and proceeded to drive west bound on El Cajon Boulevard. Law enforcement initiated a traffic stop at 40th and El Cajon Boulevard. As law enforcement approached IONITA and GEANGASU inside the vehicle, in plain view, in the center console was a brown leather wallet with a large amount of cash.

20. Based on the date, time, ATM location, presence of multiple, successive ATM withdrawals on multiple EBT cardholder accounts during a short time period, mismatch of identities between IONITA and GEANGASU and the EBT account cardholder, law enforcement detained IONITA and GEANGASU to investigate further.

21. Contained on IONITA and GEANGASU's person was one cloned EBT card, a Green Dot Visa Debit card. Law enforcement confirmed that was a cloned EBT card by reading the magnetic stripe and determining through CalDSS that the cards belonged to other real individuals, not IONITA or GEANGASU.

22. Also contained on GEANGASU's person was approximately $920 of U.S. currency. Records provided by CalDSS indicate that, while at that ATM location, IONITA and GEANGASU had conducted approximately $5,730 in total unauthorized ATM withdrawals and an additional $2,300 in attempted unsuccessful unauthorized ATM withdrawals.

23. When asked to identify himself, IONITA provided the name "Vasile" and date of birth of January 1, 2002. IONITA also produced an ID from Romania bearing the name "Vasile Ionita." When asked to identify himself, GEANGASU provided his name and date of birth of December 27, 2000. GEANGASU also produced an ID from Romania bearing his name.

24. Contained on GEANGASU's person was an ATM deep insert recovery tool.

AFFIDAVIT IN SUPPORT OF COMPLAINT -8-

25. Based upon the above relevant facts, the SoCal CFTF conducted a probable cause arrest of IONITA and GEANGASU on April 1, 2024 at approximately 0640 hours.

26. Both IONITA and GEANGASU were processed for arrest and read their Miranda Warnings and were also provided with a copy of their Miranda Warnings, translated in Romanian. IONITA and GEANGASU separately chose not to speak with law enforcement.

27. Later, Special Agent (SA) Ken Blakeley met with an ATM technician Daniel Everland at the ATM location. The ATM technician removed two deep insert skimming devices from inside two of the ATMs and a pinhole camera from the outside of an ATM. Two black and red SD cards were later found attached to the back of the pinhole camera housing. (These two SD cards were inventoried as 41-2024-CE-000081 items #2 and #3, and are two of the **subject devices**.) When the deep insert skimmers were inside an ATM, the card ejection process malfunctioned. When that occurred, the ATM appears to have kept the card and moved it internally to a "capture bin". Nine cards were found inside the capture bin. One of those cards had an orange sticker with the numbers 1108 and 920 written on it. In my training and experience and that of my colleagues, these numbers are consistent with a four-digit PIN and an account balance of $920.00. SA Blakeley took custody of the skimmers, pin-hole camera, and cards captured by the ATM.

28. At the time of their arrest, IONITA and GEANGASU both possessed one cell phone each: IONITA had a blue Apple iPhone with a clear case, inventoried under USSS item number 412-2024-CE-52, and GEANGASU possessed a black Apple iPhone, inventoried under USSS item number 412-2024-CE-53 (two of the **subject devices**). The phones were seized incident to arrest and inventoried. I submit there is probable cause to search these two Apple iPhones and the two SD cards (the **subject devices**) for evidence of and relating to skimming and EBT fraud-related activity. As

AFFIDAVIT IN SUPPORT OF COMPLAINT -9-

outlined in part above, individuals engaged in similar activities in Southern California have been shown to use their phones to communicate with coconspirators, research ATM locations, navigate, store and record fraud-related information (e.g. electronic account information, photos and videos of contraband), conduct balance inquiries via phone and the Internet, and facilitate travel and lodging while conducting fraud-related activities.  Both IONITA and GEANGASU appeared knowledgeable about both installing skimming-related equipment and making EBT withdrawals, which indicates, in my opinion, that this was not the first time engaging in this fraud.  Accordingly, this affidavit seeks authorization to search both cell phones seized IONITA and GEANGASU for evidence from January 1, 2024 through and including April 1, 2024.

<u>Procedures for Electronically-Stored Information</u>

**Cell Phones**

29.     It is not possible to determine, merely by knowing the cellular phone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device

may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, the USSS will collect the subject cellular telephone and subject it to analysis. If there are technological challenges, the examiners may need to consult with other law enforcement partners. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

31. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (**90**) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

32. The United States is unaware at this time of other attempts to search the subject devices.

## CONCLUSION

33. Based on the evidence described above, I submit there is probable cause to believe that IONITA and GEANGASU used unauthorized access devices, in the form of victims' EBT account information, on April 1, 2024 and that his use of these access devices resulted in a loss of over $1,000.00, in violation of 18 U.S.C. § 1029(a)(2) (use of unauthorized access devices). In particular, IONITA and GEANGASU attempted to withdraw approximately $8,000.000 from victims' EBT accounts, of which they successfully withdrew $5,730. I further submit that there is probable cause to believe

AFFIDAVIT IN SUPPORT OF COMPLAINT       -11-

that, on April 1, 2024, IONITA and GEANGASU possessed access device making equipment in the form of ATM deep insert skimming devices and pinhole cameras, in violation of 18 U.S.C. § 1029(a)(4) (device making equipment).  Finally, I submit there is probable cause to search the **subect phones** seized from IONITA and GEANGASU for evidence of and relating to access device fraud based on the evidence, opinions, and experience described above.

*Kevin Rydalch*

_____
Special Agent Kevin Rydalch
UNITED STATES SECRET SERVICE

AFFIDAVIT IN SUPPORT OF COMPLAINT                -12-